**IN THE COURT OF APPEALS OF IOWA**

No. 19-0402
Filed June 5, 2019

**IN THE INTEREST OF S.G.,**
**Minor Child,**

**M.G., Father,**
     Appellant,

**P.G., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District
Associate Judge.

A mother and father separately appeal the termination of their parental
rights to their adopted daughter. **AFFIRMED ON BOTH APPEALS.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant
father.

Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant
mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant
Attorney General, for appellee State.

ConGarry D. Williams of Des Moines Juvenile Public Defender, Des
Moines, guardian ad litem for minor child.

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, attorney for minor child.


Considered by Vaitheswaran, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Patricia is S.G.'s biological great-grandmother. Patricia and her husband, Michael, adopted S.G. in 2015 after the juvenile court terminated the rights of S.G.'s biological parents. But S.G. was not safe with her adoptive parents. At age seven, she reported being sexually abused by Michael and M.R., a teenaged cousin living in the home in 2017. The juvenile court terminated the parental rights of Patricia and Michael in February 2019. Both Patricia and Michael appeal. Patricia challenges the statutory basis for termination, claims termination is not in S.G.'s best interests, and asserts termination will be detrimental to S.G. because of their close bond. Michael also contests the statutory ground for termination and, alternatively, seeks additional time to obtain a psychosexual evaluation and work on his mental-health issues.

After independently reviewing the record,[1] we conclude the State proved by clear and convincing evidence the statutory basis for terminating the parental rights of both Patricia and Michael. Michael is not entitled to delay a permanent placement for S.G. And, despite her bond with Patricia, termination is necessary to ensure S.G.'s safety and to foster her long-term best interests. Based on these conclusions, we affirm.

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Although we are not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues, as are key in this case. *See id.* Evidence must be clear and convincing to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence is clear and convincing when there are no serious or significant doubts as to the correctness of conclusions of law drawn from the evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Our primary concern is the child's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

## I.      Facts and Prior Proceedings

Heartbreakingly, this case marks the second time in five years S.G. has lost her legal relationship with a set of parents in juvenile court.  In February 2015, the court terminated the rights of her biological parents, Justin and Dawnielle, based largely on their unresolved substance-abuse issues.  That same year, S.G. (who was born in 2009) and her older brother, N.G. (who was born in 2006), were adopted by Justin's grandmother, Patricia, and her husband, Michael.   Patricia also had legal guardianship of S.G.'s teenaged cousin, M.R., who lived in the home.

The new home was not a safe place for S.G.  In 2017, then seven-year-old S.G. reported being sexually abused twice in her bedroom by M.R.  S.G. also told a child-protective worker from the Iowa Department of Human Services (DHS) her adoptive father, Michael, "touched her with his penis" when Patricia was sleeping. S.G. specifically recalled Michael attempting oral sex, "but she closed her lips tight so he could not get it inside her mouth."

During an interview in early August 2017 at the regional child-protection center, S.G. recanted, saying when she told the worker about the abuse she "made a mistake" and "forgot to tell them no."  Nevertheless, the DHS determined the original allegations were founded and asked Patricia to develop a safety plan for S.G., including the measure of having Michael and M.R. leave the home.  Both Michael and M.R. told investigators the sexual-abuse allegations stemmed from Justin's desire to have the children returned to his care.

The juvenile court adjudicated S.G. and N.G. as children in need of assistance (CINA) in October 2017 and approved their removal from Patricia's

home in December 2017. The removal followed concerns Patricia was coaching S.G. to say her biological father, Justin, put her up to the sexual-abuse allegations. S.G. said Justin "had shown her with dolls what to say."

From October 2017 through April 2018, S.G. met with school-based therapist Jordan Putz. S.G. "made statements in therapy regarding dangerous events and instances occurring between her and her cousin [M.R.] and her and her grandfather Michael." In early December, Putz rejected the notion Justin planted the idea of abuse: "I don't believe this is true. [S.G.'s] demeanor as she told me this was not the same as when she talked with me about [M.R.]" The therapist pointed out Patricia's "determination to bring the family back together" and did not believe the bond between Patricia and S.G. was "healthy at this point because it is evident that [S.G.] is very emotionally confused."

The family did not make progress through visitations. The juvenile court denied Michael's request for visits because he failed to participate in a psychosexual evaluation as recommended by the DHS. And he did not address the sexual-abuse allegations in his therapy sessions, instead generally discussing "life stressors."

When S.G. and N.G. visited Patricia's home, "there was little family interaction." More often than not, the children both retreated to their rooms to engage with technology rather than having meaningful interactions with Patricia.

And the juvenile court expressed concern with Michael's "ongoing shadowy involvement" in visitations—he would leave his car parked in the driveway, and Patricia displayed a new photograph of Michael with neighborhood children in the living room. As the juvenile court aptly observed: Patricia "repeatedly chose to

infuse [Michael] and M.R. in to the children's visits." For instance, in mid-February 2018, Patricia gave S.G. a present and read aloud from a card signed "Mom and Dad." Less than two weeks later, S.G. was hospitalized after engaging in severe self-harming behaviors. Adding insult to injury, in March 2018, Patricia suggested M.R. visit her home at the same time as S.G. and N.G., but the Family Safety, Risk, and Permanency (FSRP) worker reminded Patricia M.R. could not be in the home with the younger children.

After leaving visits that spring, S.G. opened up to the FSRP worker about the sexual abuse that occurred in the home. In April 2018, S.G. started weekly sessions with Gladys Alvarez, a specialized trauma therapist, at a mental-health center for children. Throughout the next nine months of therapy, S.G. provided consistent statements to Alvarez about being sexually abused by Michael and M.R.

In May 2018, M.R. returned to Patricia's home. This development unnerved S.G., who couldn't understand why her offender was allowed to return but she wasn't. In addition, Patricia kept M.R. out of therapy, purportedly at his lawyer's request. Patricia cancelled a number of visits with S.G. that summer based on the complication of having M.R. back in the home. The FSRP worker also reported Patricia and Michael maintained a relationship. The circumstances drew into question Patricia's capacity to protect S.G. from future abuse.

By fall 2018, Patricia's therapist reported Patricia was making progress in their sessions—they were working on processing grief based on the loss of Patricia's relationship with Michael—but Patricia still did not believe S.G. was sexually abused. S.G.'s therapist, Alvarez, encouraged Patricia to attend joint sessions with the child, but Patricia missed five of seven appointments. Alvarez

did not believe Patricia had gained any insight into S.G.'s sexual abuse and resulting trauma.

In October 2018, Michael finally scheduled the psychosexual evaluation the DHS recommended in December 2017. But then, evaluator Don Hall was unsure whether he could make a valid assessment because Michael could not read or write. Hall decided to consult with psychologists to see if the testing could be modified.

The State filed a petition to terminate parental rights in January 2019. After three days of hearing evidence, the juvenile court issued an order terminating the rights of both parents as to S.G., citing Iowa Code section 232.116(1)(f) (2019).[2] Patricia and Michael both filed petitions on appeal.

## II.    Analysis

### A. Patricia's Petition

*1. Statutory Ground.* Patricia first contends the State did not offer clear and convincing evidence to support termination under section 232.116(1)(f). That provision requires proof of four elements: (1) the child is at least four years old; (2) the child has been adjudicated CINA; (3) the child has been removed from the home for at least twelve of the last eighteen months, or for the last twelve consecutive months with any period at home being less than thirty days; and (4) the child cannot be returned to the home as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(f); *see A.M.*, 843 N.W.2d at 111 (indicating statutory language "at the present time" refers to the time of the termination

---

[2] The DHS recommended a six-month extension for a permanency determination involving N.G., hoping he could be safely returned to Patricia's home.

hearing). Patricia disputes only the fourth element, asserting S.G. could be returned to her care.[3]

Patricia insists she "has done her best to move forward" and was able to "redirect" S.G. at visits when prompted by the FSRP worker. But Patricia claims she cannot control many factors of M.R.'s case or Michael's actions. We find Patricia's arguments all too revealing. She failed to be an advocate for S.G. in the family's negative dynamics and instead allowed the threat posed by Michael and M.R. to continue to loom in her home. Like the juvenile court, we conclude S.G. cannot be safely returned to Patricia's care given Patricia's unwillingness or inability to understand the child's trauma or to protect her from future harm. The State offered ample proof to support the statutory basis for termination of parental rights.

*2. Best Interests and Closeness of Relationship.* Patricia next argues termination of her parental rights is not in S.G.'s best interests. She contends the juvenile court did not take into account S.G. "has already undergone a prior termination and the impact a second could have on her." She also raises the issue S.G.'s bond to N.G., asserting: "So not only is her mother being taken away, her brother is also being taken away by the [c]ourts."

In determining best interests, we give primary consideration to the child's safety, to the best placement for furthering her long-term nurturing and growth, and to her physical, mental, and emotional condition and needs. Iowa Code § 232.116(2); s*ee In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting use of an

---

[3] In actuality, Patricia recognizes "placing S.G. back in the home is not feasible" as M.R.'s case "stands today" and asks for a plan "to move this case forward appropriately."

unstructured best-interests test). The juvenile court may refrain from terminating parental rights if clear and convincing evidence shows severing the ties would be detrimental to the child due to her close relationship with the parent. Iowa Code § 232.116(3)(c).

We recognize S.G. has a bond with Patricia and would like to return home. But Patricia's home has not been a safe haven for S.G. Returning to Patricia's care will not further S.G.'s long-term nurturing and growth—instead, it will keep S.G. in the same stagnant, anxiety-ridden place that she consistently discusses with her therapist. Patricia is right that the second termination will likely add to S.G.'s sorrow, as will the continued separation from N.G. But ultimately S.G.'s mental and emotional needs are best served by a supportive foster-care home. S.G.'s therapist testified S.G. trusts her foster mother and the foster mother is supportive of S.G.'s treatment goals. We agree with the juvenile court's determination S.G.'s bond with Patricia "appears to be lessening" and is not always a healthy one. This record does not suggest their relationship is so close S.G. would be disadvantaged by the termination or that any detriment would outweigh the ongoing risk of trauma. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). Under these circumstances, section 232.116(3)(c) does not stand in the way of termination.

**B. Michael's Petition**

Michael contends the State did not adequately prove a ground for termination.[4]  Specifically, he contends the State offered insufficient evidence to show S.G. could not be returned to his care.  He complains the DHS did not inspect his current home and refused to provide him with even supervised visitation.  In the alternative, Michael asks for "additional time to obtain the psychosexual evaluation, if at all possible, and continue working with his therapist on mental[-] health issues."

We are not convinced by Michael's contentions.  A parent's failure to address his role in sexual abuse diminishes his chances of regaining custody and care of his child.  *See In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002).  In this case, Michael essentially forfeited his right to visitation with S.G. for many months by not obtaining a psychosexual evaluation.  Clear and convincing evidence supported termination under section 232.116(1)(f).  Plus, given Michael's procrastination in seeking the evaluation, we cannot endorse an extension of time.  *See* Iowa Code § 232.104(2)(b); *In re A.A.G.*, 708 N.W.2d 85, 92–93 (Iowa Ct. App. 2005).

**AFFIRMED ON BOTH APPEALS.**

---

[4] Michael's petition on appeal cites Iowa Code section 232.116(1)(h), which provides for termination in cases where children are "three years of age or younger."  Because S.G. was over four years of age, we presume he meant to cite section 232.116(1)(f).